UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LONG PLAYER LP,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>GOLD MAIDEN LLC, UNITED TRISTAR LLC, JEREMY SOUSSAN, DAN VAHDAT, SOUVAH LLC, BLUEPRINT INDUSTRIES, LLC, AND BLUE CITY MEDIA,<br><br>　　　　　　　　　　Defendants. | Case No.18-CV-2414(LGS)<br><br>**DECLARATION OF<br>SHAHAB DANIEL<br>VAHDAT** |

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

I declare under penalty of perjury that the foregoing is true and correct.

1.　　I am the sole member of defendant United Tristar LLC, a member of defendant BluePrint Industries, LLC ("BluePrint" or the "Company"), a member of defendant Souvah LLC ("Souvah"), and an individually named defendant in this action. This affidavit is submitted in support of defendants' cross-motion to dismiss and in opposition to the motion by plaintiff Long Player LP ("Long Player") for a Preliminary Injunction. For the reasons set forth below, and in the accompanying declaration of my partner, Jeremy Soussan (which I adopt and incorporate by reference in its entirety), and in the accompanying memorandum of law of defendants, the motion should be denied, and the Temporary Restraining Order and Asset Freeze Order (collectively, "Freeze Order") obtained by plaintiff without prior notice to defendants, lifted. I am fully familiar with the facts and circumstances set forth herein.

2.　　Given the completely insufficient two-sentence description by Chris Goyer's March 16, 2018 affidavit ("Goyer Aff.") of the Company's business (*See Goyer Aff. ¶ 5)*, I will provide the necessary background for context.

## The Business of Affiliate Marketing

3. BluePrint owns and operates what is known as an "Affiliate Network", which is engaged in the business of "Affiliate Marketing", a performance-based marketing channel where a "publisher" is awarded for business it generates for an "advertiser". The advertiser and the publisher are both clients of BluePrint, which operates as a broker between advertiser and publisher A publisher (also known as an affiliate or partner), is in the business of promoting a product or service on its website. An advertiser (also known as a merchant or brand), has a product or service to sell. The third party in the affiliate marketing triangle is the consumer, who purchases an advertiser's product or service, or expresses an interest in that product or service, via a publisher's internal traffic. This internal traffic is typically generated by a website, emails, social media, advertisements or banner placements.

4. Publishers earn a fee or commission when a visitor to their site clicks an affiliate link (for example, a banner, logo or text link), and is then directed to an advertiser's website. A fee or commission could be generated by a consumer viewing the advertisement, clicking on the ad or completing an action on the website, such as the completion of an online application form.

5. For example, an advertiser like AIG Insurance looking for users to obtain quotes on its insurance products wants publishers to drive consumers to the AIG Insurance website. When those consumers complete a form with their information and receive a quote from AIG, the publisher earns a fee or commission. An affiliate network, such as BluePrint, controls tracking, payments and facilitates the relationships between a network of publishers and a network of advertisers, and takes an agreed upon margin from the transaction for providing the network and its related services.

6. Publishers that do business with BluePrint may browse an array of different advertiser campaigns via our BluePrint Cake Tracking Platform ("Tracking Platform"). This platform dashboard hosts different tools to enable the tracking of the customer journey and generates a range of reports to enable publishers to stay up to date with performance data and revenue. Once a publisher's request to join an advertiser campaign has been accepted, the publisher can begin promoting the advertiser products on the publisher's website and position itself to potentially earn commissions or fees.

7. When a consumer clicks on a publisher's affiliate link, the consumer will be redirected from the publisher's site to the advertiser's site where the product or service will be displayed. Upon clicking the affiliate link, a "cookie" (the technology used which enables the network to track all affiliate sales that have been generated through a publisher's website) will be dropped onto the consumer's browser, enabling the network to record all necessary information about the consumer's journey. Once a consumer purchases a product from the advertiser's website, the consumer will be taken to a confirmation page, which contains network conversion tracking. The affiliate network now has all necessary information to track the consumer's journey to purchase so that they can award commission to the publisher.

**Defendants Have Not Transacted Secret Business to Plaintiff's Detriment**

8. To paint the misleading picture that he did to obtain the Freeze Order without notice to defendants, Goyer claims that the initials "SOU" (for me) and "VAH" (for my partner Dan Vahdat) in the February 21, 2018 transaction that he noticed through his confidential log-in access code to the Bank Account "aroused [his] suspicion", and that prompted him to review transactions since 2014.  First, if Mr. Soussan and myself wanted to mislead plaintiff in any way—which we did not—we certainly would have made a greater effort to give this company a

name that was not so obviously tied to us. Secondly, Goyer –simply by logging in to the Bank Account for the Company in which he holds a one-third interest—could have seen each and every one of the Company's transactions with Souvah at the time they occurred. Thirdly, and most importantly, all these transactions were legitimate business transactions in which BluePrint also received a payment.

9. Short on substance and without taking any care to accurately describe the Affiliate Marketing trade, plaintiff also misleads the Court with its inclusion of the reference to "Blue City Media". This is not a legal entity or legal trade name; it is simply a designation that was established for publisher-tracking purposes on the BluePrint platform. It bears mentioning that Goyer did the same with HakiBird, using names such as "Haki Vince" on the platform for business monitoring purposes before he unilaterally checked out. As Goyer points out, Blue City does not have a separate bank account, but shares that same one as Souvah. The Blue City name has been used since 2014 and was available in plain sight on the Tracking Platform and Bank Account statements.

10. The fact that Goyer may have only noticed the reference to Blue City "two days later" after his "discovery" in 2018 about business transactions taking place since 2014 should hardly qualify as a contributing basis to permit the extension of the extraordinary relief plaintiff secretly obtained without making full disclosures to the Court.

### Goyer Has Breached His Obligations to Defendants

11. Goyer repeatedly promised that he would report the profits owed to BluePrint but that he just "hasn't gotten around to it". BluePrint sent him countless reminders, requests, emails and invoices for the hard costs advanced and he never responded. The amount due from HakiBird and Goyer to the Company for these unreimbursed costs and expenses is approximately $56,000.

The profits Goyer never shared with the Company are believed to be more than $250,000. In addition, Goyer wrongfully leveraged the Goldbar-based publishing platform to make profits believed to be greater than $500,000 for HakiBird, and not for the benefit of BluePrint.

12. In an email exchange in March 2014 between Goyer and Mr. Soussan, Goyer asked how much he owed and was told that he had not paid his monthly share for 17 months. When I followed up with Goyer on May 30, 2014 if he had "done anything with the long-standing AR that you owe [the Company]?", his response was "No I haven't". To this day, nearly four years later, Goyer still has not made good on this obligation to the Company.

13. Goyer does not even bother to respond to communications regarding pressing business needs. For example, we needed his assistance to locate a programmer in January 2016, and he failed to even respond to text messages and emails. Attached as **Exhibit F** is a copy of emails that I sent him on January 18 and 19, 2016 that were ignored.

14. In sum, I respectfully request that the Court deny the Plaintiff's motion, lift the Freeze Order and permit the Company to survive.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of March 2018 in Los Angeles, California.

_____
SHAHAB DANIEL VAHDAT